D iceman, J.
If there was no actual consideration for the obligation executed and delivered to the plaintiff in error, it was competent to prove the want or failure of such consideration notwithstanding a “ scrawl seal ” was attached to the instrument.
By the act of Februarjr 24, 1834, (1 Curwin, 124,) it was provided, “ That in any action founded upon any specialty or written contract for the payment of money or delivery of property, the defendant by special plea, or by notice attached to and filed with the general issue, may allege the want or failure of consideration in the whole or any part thereof.” This act was repealed by the act establishing a Code of Civil Procedure, but section 93 of the code, which is continued in section 5071 of the Revised Statutes, provided that, “ The defendant may set forth in his answer as many grounds of defense, counter-claim and set-off as he may have, whether they be such as have been heretofore denominated legal or equitable, or both.” As against a strictly legal cause of action, a defendant, therefore, may now set up an equitable defense, and thereby not only bar the plaintiffs’ action, *572 but obtain the proper affirmative equitable relief connected with the subject-matter. And although the common law, in requiring a valuable consideration in order to render an agreement valid and binding, declared, in its strictness, that a seal was conclusive evidence of such a consideration, yet, in determining the rights of parties upon equitable principles, a seal has been divested of the apparent sacredness with which it was clothed by the common law, and equity, looking rather to reality than form, does not permit a seal to supply the place of a real consideration, and notwithstanding the seal, will allow the want or failure of such consideration to be shown in the enforcement of executory contracts of every description. In Richardson v. Bates, 8 Ohio St. 264, it was said by Sutliee, J.: “ Under the statute of February 24, 1834, allowing the failure or part failure, of consideration to be given in evidence, in a suit upon a specialty, the facts stated in the answer would have constituted a perfect defense. And the provision of the code, allowing a defendant to set forth in his answer equitable as well as legal grounds of defense, permitted the same defense to be made in this case; and therefore the failure of consideration, stated in the answer, constituted a good defense.”
Conceding then that it was competent to set up a want or failure of consideration as a defense to the original action, the decisive question in the case before us is, whether the written obligation entered into by Henry Louderman was wholly without consideration, or was not founded upon sufficient consideration to support the plaintiff’s action. It is alleged in the answer, that for many years prior to the date of the written obligation described in the petition, Jesse Louderman had been dead; that his estate was insolvent, and long before the making of the obligation, had been fully settled ; and that the note of Jesse Louderman was, on the 5th day of October, 1882, and for years before, had been wholly worthless, all of which, it is alleged, was then fully known to the plaintiff. It is evident, however, that the father did not treat the note of his son as without value, for he stipulated for the payment to the plaintiff out of his per *573 sonal estate at his decease, of a sum equal to the full amount called for by the note. The motive or inducement operating upon the father seems to have been so controlling, that he was determined upon paying his son’s outstanding nóte, ' though postponing payment until his decease, when it was to be paid out of his personal estate, and the sum paid to be a charge and advancement to the son’s heirs. For aught that appears, there may have been circumstances, best known to the father, which in his estimation rendered his possession of the note a valuable acquisition. And the manifest wish and design of the father to acquire the ownership and possession of the note, obviously tended to enhance the value of the instrument while in the hands of the plaintiff. It cannot well be said, we think, that the chose in action surrendered by the plaintiff was valueless, or was inadequate as a consideration for the execution and delivery of the written obligation, the adequacy or inadequacy of consideration having been left to the free exercise of the judgment of the contracting parties.
It is an elementary principle, that the law will not enter into an inquiry as to the adequacy of the consideration, but will leave the parties to judge of that for themselves. The reason of the rule is succinctly expressed by Alderson, B., in Pilkington v. Scott, 15 M. & W. 657: “ Before the decision in Hitchcock v. Coker,” he says, “ a notion prevailed that the consideration must be adequate to the restraint; that was, in truth, the law making the bargain, instead of leaving the -parties to make' it, and seeing only that it is a reasonable and proper bargain.” It is considered unwise to interfere with the facility of contracting, and the free exercise of the judgment and will of the parties, by not allowing them to be sole judges of the benefits to be derived from their bargains. “It is, indeed, necessary that the consideration should be of some value; but it is suffcient, if it be of slight value only; or even if it be such as could be valuable to the party promising.” 1 Chit. Con., 11th Am. ed., 29, and cases cited.
"When a contract is founded on a transfer of an article of *574 property, the authorities are numerous in illustration of the doctrine, that in determining adequacy of.consideration, the extent of benefit derivable from it is not considered; a value, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action oñ the contract or promise. “ Thus, the mere surrender and delivery of a letter or other written document which the promisee has a right to beep and retain in his possession, is a sufficient consideration for the promise, although the possession of it may turn out eventually to be of no value in a pecuniary point of view, or no benefit may have resulted to the one party, nor prejudice to the other, from the surrender and delivery of the document.” 1 Ad. Con., 6, 8th ed.
In Haigh v. Brooks, 10 A. & E., 309, 320, the declaration in assumpsit stated that the defendant promised to see certain bills accepted by L. paid at maturity, in consideration that the plaintiffs, at his request, would give up to him a certain guaranty on behalf of L., then held by plaintiffs. It was averred that the. plaintiffs gave up the guaranty, but that the defendant did not perform his promise. There was a plea that the guaranty was a promise to answer for the debt of another, and that there was no agreement in writing, wherein any sufficient consideration was stated according to Stat. 29, Car. 2. It was held, that it appeared on the pleadings that the plaintiffs had delivered something to the defendant, on the faith of his promise, which he at the time considered valuable, and this being so, and no fraud imputed, he could not afterwards excuse a breach of the promise, by alleging that the thing given up was not of the value he had supposed.
Lord Denman, C. J., in delivering the judgment of the court, said: “We are by no means prepared to say that any circumstances short of the imputation of fraud in fact could entitle us to hold that a party was not bound by a promise made upon any consideration which could be valuable; while of its being so, the promise by which it was obtained from the holder of it must always afford some proof.
“Here, whether or not the guaranty could have been *575 available within the doctrine of Wain v. Warlters, (5 East. 10,) the plaintiffs were induced by the defendant’s promise to part with something which they might have kept, and the defendant obtained what he desired by means of that promise. Both being free and able to judge for themselves, how can the defendant be justified in breaking this promise, by discovering afterwards that the thing in consideration of which he gave it did not possess that value which he supposed to belong to it ? It cannot be ascertained that that value was what he most regarded. He may have had other objects and motives; and of their weight he was the only judge.”
As alleged in the original petition, and as stated in the written obligation upon which the action is founded, the consideration of Henry Louderman’s executing and delivering the obligation was the surrendering and turning over to him of the note of his son. The facts constituting the cause of action were admitted by the demurrer to the petition; and in the answer thereto subsequently filed, there was no denial of the allegations in the petition as to the consideration of the written obligation. The answer, in the nature of a confession and avoidance, avers substantially, that the note of Jesse Louderman was, at the time it was surrendered, and for years before had been uncollectible, and that therefore the written obligation was wholly without consideration, and created no valid claim against Henry Louderman or his estate. If, before and at the time the note was surrendered, it was not collectible out of Jesse Louderman’s estate, it would not follpw — for reasons before assigned — that the written obligation was necessarily without consideration. Henry Louderman received from the plaintiff that for which he contracted, and obtained that which, by the terms of the contract, was evidently deemed by the contracting parties an object of value. In contemplation of law, there was, in our view, no want or failure of consideration for the written obligation of Henry Louderman.
It is alleged in the answer of the defendant, “ that the just and legal debts of said estate — of Henry Louderman — are more than all the personal property,” and, “ that all the real *576 estate of the deceased was specifically devised.” Henry Louderman, by his written obligation made the claim of Henry Judy a debt against his estate. It was to be paid out of his personal estate at his decease, by his executor or administrator, as the case might be. What was his personal estate ? Not, as contended, that which would remain after the payment of his debts, and out of which a distributive share would go to the heirs of Jesse Louderman, but, the body of his personal property existing at the time of his death. Tire personal estate is the regular and primary fund for the payment of debts, and this will be first applied until exhausted. And, “ as soon as the executor or administrator shall ascertain that the personal estate in his hands will be insufficient to pay all the debts of the deceased,” it is made his duty, by statute, to apply to the probate court or the court of common pleas for authority to sell the real estate of the deceased. Sec. 6186, Revised Statutes. Where, for a valuable consideration, one promises to pay a debt out of his personal estate at his decease, without a specific limitation to that estate alone, if, at his decease, the personal estate is insufficient to pay the debt, the creditor will not be precluded from resorting to the real estate of the debtor, if any there be. Otherwise, it might be in the power of the debtor, in his lifetime, to convert his personal into real estate, and thus evade his obligations by simply changing the form of his property. Under his written obligation, the personal property of Henry Louderman was made the primary fund for the payment of the plaintiff’s claim; but, if, at his death, his just and lega^ debts exceeded all his personal property, the residue of his estate, if any, was not thereby discharged from the payment of his debt to the plaintiff.
The demurrer to the answer was rightly sustained; and the judgment of the circuit court should be reversed, and that of the court of common pleas affirmed.

Judgment accordingly.